NEAL S. SALISIAN, SBN 240277
neal.salisian@salisianlee.com
GLENN R. COFFMAN, SBN 305669
glenn.coffman@salisianlee.com
JARED T. DENSEN, SBN 325164
jared.densen@salisianlee.com
**SALISIAN | LEE LLP**
550 South Hope Street, Suite 750
Los Angeles, California 90071-2924
Telephone:   (213) 622-9100
Facsimile:    (800) 622-9145

MARISA D. POULOS (SBN 197904)
marisa.poulos@balboacapital.com
**BALBOA CAPITAL**
575 Anton Boulevard, 12th Floor
Costa Mesa, California 92626
Tel: (949) 399-6303

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL

# THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL, | Case No. 8:23-cv-02397-JVS(DFMx) |
| | [Assigned to the Hon. James V. Selna] |
| Plaintiff, | **BALBOA CAPITAL'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS M AND W SHABAN, INC. AND MOEEN SHABAN** |
| vs. | |
| M AND W SHABAN, INC., a Kansas corporation, doing business as DAIRY QUEEN; MOEEN SHABAN, an individual, | Complaint Filed:     December 18, 2023<br>Trial Date:             None |
| Defendants. | |

1  TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE that on August 12, 2024, at 1:30 p.m., or as soon

3  thereafter as the matter may be heard, in Courtroom 10C of the Ronald Reagan

4  Federal Building and United States Courthouse, located at 411 West Fourth Street,

5  Santa Ana, CA, 92701, the Honorable James V. Selna presiding, plaintiff Ameris

6  Bank d/b/a Balboa Capital ("Plaintiff" or "Balboa") will, and hereby does, apply for

7  an entry of default judgment pursuant to Federal Rules of Civil Procedure Rule 55

8  and Local Rules 55-1, 55-2, and 55-3, against Defendants M and W Shaban, Inc., a

9  Kansas corporation, doing business as Dairy Queen ("M and W") and Moeen

10  Shaban, an individual ("Shaban") (collectively with M and W, "Defendants"), for a

11  judgment amount of **$98,895.91**.

12  PLEASE TAKE FURTHER NOTICE that Balboa seeks a default judgment

13  against Defendants in the total amount of $98,895.91, as Balboa has established (a)

14  a sum certain due and owing by Defendants to Balboa pursuant to the Business

15  Loan Agreement entered into by Defendants and Balboa; (b) that Defendants are

16  not in military service and are neither a minor or incompetent person; and (c) costs

17  and attorneys' fees are properly awardable.

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1    PLEASE TAKE FURTHER NOTICE that this motion is based on this

2  Notice of Motion, the supporting Memorandum of Points and Authorities, the

3  supporting declarations of Jared T. Densen and Don Ngo, and the exhibits attached

4  thereto, the pleadings and papers filed in this action, and upon such further briefing,

5  authorities, and argument submitted to the Court prior to, or during, the hearing on

6  this matter.

7

8  DATED:  July 11, 2024              SALISIAN | LEE LLP

9                                     By: _____

10                                         Jared T. Densen

11                                         Glenn R. Coffman
                                           Neal S. Salisian
12

13                                     Attorneys for Plaintiff
                                       AMERIS BANK d/b/a BALBOA CAPITAL
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2    I.    INTRODUCTION AND RELEVANT FACTS....................................................1

3         a.   The Business Loan Agreement…………………………………………1

4         b.   Attorneys' Fees and Costs…………………………………………….3

5         c.   Motion for Default Judgment ………………………………………….3

6    II.    LEGAL ARGUMENT......................................................................................4

7    A.   Plaintiff Will Be Highly Prejudiced If Its Default Judgment Application Is

8    Denied. ...........................................................................................................5

9    B.   Plaintiff Has A High Likelihood Of Success On The Merits Of Its

10   Substantive Claims And Its Complaint Is Sufficiently Pled...................................6

11   C.   The Sum Of Money At Stake Favors An Entry Of A Default Judgment. .......9

12   D.   There Are No Material Facts That Are Reasonably In Dispute....................10

13   E.   Defendants Defaults Are Not The Result Of Excusable Neglect. .................12

14   F.   Policy Concerns Favor Default Judgment In This Matter. ...........................13

15   G.   Plaintiff Has Proven Its Damages. ..............................................................14

16   III.    CONCLUSION ..........................................................................................15

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

CASES

*Acoustics, Inc. v. Trepte Constr. Co.,*
    14 Cal. App. 3d 887, 916 (1971)...........................................................................7

*Draper v. Coombs,*
    792 F.2d 915, 924 (9th Cir. 1986)......................................................................12

*Educational Serv., Inc. v. Kansas State Board for Higher Education,*
    710 F.2d 170, 176 (4th Cir. 1983).......................................................................12

*Eitel v. McCool,*
    782 F.2d 1470, 1471-72 (9th Cir. 1986)......................................................5, 9, 12

*Geddes v. United Fin. Group,*
    559 F.2d 557, 560 (9th Cir. 1977).....................................................................6, 10

*Landstar Ranger, Inc. v. Parth Enters, Inc.,*
    725 F.Supp.2d 916, 921 (C.D. Cal. 2010)...........................................................10

*McKnight v. Webster,*
    499 F.Supp.420, 424 (E.D. PA 1980) ................................................................12

*NewGen, LLC v. Safe Cig, LLC,*
    804 F.3d 606, 616 (9th Cir. 2016) …………….…………………..……12, 13

*O'Connor v. State of Nevada,*
    27 F.3d 357, 364 (9th Cir. 1994)........................................................................12

*Pena v. Seguros La Comercia, S.A.,*
    770 F.2d 811, 814 (9th Cir. 1985)......................................................................13

*Penpower Tech, Ltd.,*
    627 F.Supp.2d at 1093...........................................................................9, 10, 13

*PepsiCo, Inc. v. Cal. Sec. Cans,*
    238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002)......................................................5, 6

*Reichert v. Gen. Ins. Co.,*
    68 Cal. 2d 822, 830 (1968)...................................................................................6

2

*Shanghai Automation Instrument Co. Ltd. v. Kuei,*

    194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) ........................................................12

*Walters v. Statewide Concrete Barrier, Inc.,*

    No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) .........9

STATUTES

Civ. Code §§ 1620, 3300 ..............................................................................................7

Fed. R. Civ. P. 55 ..........................................................................................................4

RESTATEMENT 2d. CONTRACTS § 235(2) .............................................................7

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:23-cv-02397-JVS(DFMx)

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.    INTRODUCTION AND RELEVANT FACTS**

3        Plaintiff Ameris Bank d/b/a Balboa Capital ("Plaintiff" or "Balboa") submits

4   the instant Motion for Default Judgment against Defendants M and W Shaban, Inc.,

5   a Kansas corporation, doing business as Dairy Queen ("M and W") and Moeen

6   Shaban, an individual ("Shaban") (collectively with M and W, "Defendants").

7        **a.  The Business Loan Agreement.**

8        This action involves a claim for damages by Balboa against both Defendants

9   for the breach of the Business Loan Agreement No. F477578-000 (the "BLA").

10  [*See* Declaration of Don Ngo ("Ngo Decl."), ¶3, Exh. A.]

11       Specifically, Balboa, on the one hand, and Defendants, on the other, entered

12  into a Business Loan Agreement on or about September 22, 2023.  [*See id*.]  Under

13  the terms of the BLA, Balboa loaned to Defendants the sum of $60,000.00, solely

14  to be used for general business purposes or working capital needs, and not for

15  personal, family, or household purposes.  [*See id*.]

16       Concurrent with the execution of the BLA, and in order to induce Balboa to

17  enter into the BLA with M and W, Shaban personally guaranteed, in writing, the

18  payment of the then-existing and future indebtedness due and owing to Balboa

19  under the terms of the BLA (the "Guaranty").  [*See id*., ¶4.]  Balboa relied on such

20  Guaranty to agree to lend M and W a business loan.  [*See id*., Exh. A.]

21       The terms of the BLA incorporate by reference the terms of the

22  Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments

23  (ACH Debit) (the "AA").  [*See id*., ¶5.]  Pursuant to the terms of the AA,

24  Defendants' enrollment in Balboa's Automatic Payment Plan was required for loan

25  approval.  [*See id*.]  Defendants indeed agreed to enroll in the Automatic Payment

26  Plan and authorized Balboa to collect payments required under the terms of the

27  BLA from a checking account designated by Defendants.  [*See id*.]  Defendants

28

1

provided the bank account information which made it possible for Balboa to electronically debit payments under the BLA.  [*See id*.]

Pursuant to Paragraph 13(a) of the BLA provides that, Defendants are in default when Balboa is unable to collect payment on three (3) consecutive payments.  [*See id*., ¶6.]

Also under the BLA, Defendants were required to make sixty-six (66) weekly payments of $1,372.73, beginning September 30, 2023.  [*See id*., ¶7, <u>Exh. A</u>.]  The last payment received by Balboa was credited toward the weekly payment due for October 12, 2023.  [*See id*.]  Therefore, on November 2, 2023, M and W breached the BLA, and Shaban breached the Guaranty, by (1) failing to make three consecutive weekly payments, and (2) breaching the terms of the AA, and thus both have remained continuously in default.  [*See id*., <u>Exh. B</u>.]

Additionally, in connection with the BLA, M and W executed and delivered to Balboa a Promissory Note (the "Note"), "in connection with that certain Business Loan Agreement No. F477578-000."  [*See id*., ¶8, <u>Exh. A</u>.]  Shaban personally guaranteed the terms of the Note.  [*See id*.]

Pursuant to Paragraph 14C of the BLA, Balboa is entitled to declare the entire obligation due under the BLA immediately due and payable.  [*See id*., ¶9.]

At the time of defendants' default there still remained sixty-three (63) weekly payments for a total of **$86,481.99**, due to Balboa.  [*See id*., ¶11, <u>Exh. B</u>.] Defendants have since failed to make any payments.  [*See id*.]

In addition, based on the amount due of $86,481.99, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from November 2, 2023 (the date of breach), to August 12, 2024 (the hearing date noticed on this Motion), for a total interest amount of **$6,751.65**, accruing at a rate of **$23.69 per day**, until the entry of judgment.  [*See id*., ¶12; *see also* Declaration of Jared T. Densen ("Densen Decl."), ¶¶5-6.]

1    **b. Attorneys' Fees and Costs.**

2         Pursuant to Paragraph 12 of the BLA, Balboa is entitled to recover its

3    attorneys' fees and costs from Defendants.  [*See* Ngo Decl., ¶10, Exh. A.]  Balboa

4    has incurred **$603.00**, in recoverable costs.  [*See* Densen Decl., ¶7, Exh. D.]  The

5    amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of

6    **$5,059.27**.  [*See id*., ¶7.]

7    **c. Motion for Default Judgment.**

8         Balboa's Motion for Default Judgment satisfies the procedural requirements

9    of Local Rule 55-1 and 55-2, and Federal Rule of Civil Procedure 55(b).  Balboa

10   filed its Complaint and case-initiating documents on December 18, 2023.  [*See*

11   Dkts. 1-4.]  Defendants M and W and Shaban were properly served on April 12,

12   2024, pursuant to Federal Rule of Civil Procedure 4.  [*See* Dkts. 14, 21.]  On May

13   24, 2024, Balboa filed its Request for Clerk to Enter Default against M and W and

14   Shaban ("Default Entry Request"), and the Clerk of the Court entered the default

15   against M and W and Shaban on May 28, 2024.  [*See* Dkts. 22-23.]

16        Defendant M and W is a Kansas corporation, and is not a minor, incompetent

17   person, or a person in military service or otherwise exempted from default

18   judgment under the Servicemembers Relief Act of 1940 ("SCRA").  [*See* Densen

19   Decl., ¶4, Exh. C.]  Defendant Shaban is not a minor, incompetent person, or a

20   person in military service or otherwise exempted from default judgment under the

21   SCRA.  [*See id*.]

22        Moreover, this Court has subject matter jurisdiction over the instant action.

23   The amount in controversy, as alleged in the Complaint and as set forth herein,

24   exceeds $75,000.  [*See* Dkt. 1.]  Plaintiff Balboa was and still operates as a

25   California corporation, with its principal place of business in Orange County,

26   California.  [*See* Dkt. 1, ¶1; *see also* Densen Decl., ¶8.]  Balboa is also now a

27   wholly owned subsidiary of Ameris Bank, and operating as a division of Ameris

28   Bank, a Georgia state-chartered banking corporation, and accordingly, Balboa is a

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:23-cv-02397-JVS(DFMx)

citizen of the State of California, as well as the State of Georgia, via its parent company, Ameris Bank.  [*See id.*]

Defendant M and W is a Kansas corporation, incorporated in Kansas, with its principal place of business in Reno County, Kansas, and is therefore a citizen of the State of Kansas.  [*See* Densen Decl., ¶9.]  Based upon my office's research, and upon information and belief, defendant Shaban is a citizen of the State of Kansas, according to the Driver's License provided to Balboa from Shaban, which is issued from the State of Kansas and lists his domicile as Wichita, KS 67207.  [*See id.*, Exh. E.]

As set forth below, a default judgment should be entered against Defendants since Balboa satisfies all seven factors under *Eitel*.  Moreover, Balboa has adequately proven its damages.  Thus, Balboa respectfully requests that this Court grant its request for a default judgment against Defendants in the amount of **$98,895.91**.

## II.    **LEGAL ARGUMENT**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," the Court may enter a judgment of default upon Plaintiff's application after an entry of default.  *See* Fed. R. Civ. P. 55.  Local Rule 55 sets forth the procedural requirements that must be satisfied by a party moving for a default judgment.  Balboa's Motion has satisfied such requirements.

Here, Balboa filed its Complaint and case-initiating documents on December 18, 2023.  [*See* Dkts. 1-4.]  Defendants M and W and Shaban were properly served on April 12, 2024, pursuant to Federal Rule of Civil Procedure 4.  [*See* Dkts. 14, 21.]  On May 24, 2024, Balboa filed its Request for Clerk to Enter Default against M and W and Shaban ("Default Entry Request"), and the Clerk of the Court entered the default against M and W and Shaban on May 28, 2024.  [*See* Dkts. 22-23.]

Defendant M and W is a Kansas corporation, and is not a minor, incompetent person, or a person in military service or otherwise exempted from default

4

judgment under the SCRA.  [See Densen Decl., ¶4, Exh. C.]   Defendant Shaban is
not a minor, incompetent person, or a person in military service or otherwise
exempted from default judgment under the SCRA.  [See id.]

The Ninth Circuit follow the seven *Eitel* factors in deciding whether to enter
a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits
> of plaintiff's substantive claim; (3) the sufficiency of the
> complaint; (4) the sum of money at stake in the action; (5)
> the possibility of a dispute concerning material facts; (6)
> whether the default was due to excusable neglect; and (7)
> the strong policy underlying the Federal Rules of Civil
> Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  A plaintiff need not
prove that all seven factors weigh in its favor, as courts *may* consider these factors
in their discretion on whether to enter a default judgment.  *See id*.

Here, the underlying facts in this action show that all seven of the *Eitel*
factors weigh in Balboa's favor, and thus, supports the entry of default judgment.

## A.  <u>Plaintiff Will Be Highly Prejudiced If Its Motion for Default Judgment Is Denied.</u>

A situation in which a plaintiff will be without any other recourse or recovery
should its default judgment application be denied qualifies as prejudice.  *See
PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Here, Balboa has submitted its Motion for Default Judgment as a last resort
due to Defendants' deliberate unwillingness to accept responsibility for its actions
or even acknowledge Balboa's allegations.

The fact remains that Balboa loaned to Defendants the sum of $60,000.00,
solely to be used for general business purposes or working capital needs, and not
for personal, family, or household purposes, with Defendants agreeing to make
sixty-six (66) weekly payments of $1,372.73, for which sixty-three (63) weekly
payments for a total of **$86,481.99**, still remain due to Balboa.  [*See* Ngo Decl.,
¶¶3, 7, 11.]

Balboa has made demands for its monies from Defendants under the BLA and the Guaranty, all of which Defendants have failed to pay back. [*See id.*, ¶13.]

Balboa filed its Complaint in this action to recover the monies owed on it, but Defendants have been unwilling to participate in, or otherwise, acknowledge the litigation. Balboa's Motion for Default Judgment is its final option for an attempt at recovery against Defendants, and without the Court granting the default judgment, Balboa will be prejudiced and be denied its right to a judicial resolution of its presented claims against Defendants. *See PepsiCo*, 238 F.Supp.2d at 1177.

Moreover, if Balboa's Motion for Default Judgment is denied, it will suffer a significant loss due to no fault of its own, and Defendants will obtain a significant windfall of over $86,481.99. Not only will the deliberate nonaction by Defendants and its continued stalling techniques be unjustly rewarded, but Balboa will effectively be penalized for its procedurally proper demands for the return of its monies available through the court system's proper channels.

Balboa will be substantially prejudiced should its Motion for Default Judgment be denied, and thus, further supports the Default Judgment against Defendants to be granted by this Court.

## B. Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled.

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Courts often consider the second (merits of the claim) and third (sufficiency of the complaint) factors under *Eitel* together. *See PepsiCo*, 238 F.Supp.2d at 1177.

The elements for a breach of contract are: (1) the existence of a contract, (2) performance by the plaintiff of its obligations under the contract, (3) breach of the contract by the Defendants, and (4) resulting damages proximately caused by the Defendants' breach of contract. *See Reichert v. Gen. Ins. Co.*, 68 Cal.2d 822, 830

(1968); *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal.App.3d 887, 916 (1971); *see also* Civ. Code §§ 1620, 3300; and RESTATEMENT 2d. CONTRACTS § 235(2).

Here, all elements are met.  Specifically, Balboa, on the one hand, and Defendants, on the other, entered into the BLA on or about September 22, 2023. [*See* Ngo Decl., ¶3, Exh. A.]  Under the terms of the BLA, Balboa loaned to Defendants the sum of $60,000.00, solely to be used for general business purposes or working capital needs, and not for personal, family, or household purposes.  [*See id*.]

Concurrent with the execution of the BLA, and in order to induce Balboa to enter into the BLA with M and W, Shaban personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the BLA via the Guaranty.  [*See id*., ¶4, Exh. A.]  Balboa relied on such Guaranty to agree to lend M and W a business loan.  [*See id*.]

The terms of the BLA incorporate by reference the terms of the AA.  [*See id*., ¶5.]  Pursuant to the terms of the AA, Defendants' enrollment in Balboa's Automatic Payment Plan was required for loan approval.  [*See id*.]  Defendants indeed agreed to enroll in the Automatic Payment Plan and authorized Balboa to collect payments required under the terms of the BLA from a checking account designated by Defendants.  [*See id*.]  Defendants provided the bank account information which made it possible for Balboa to electronically debit payments under the BLA.  [*See id*.]

Pursuant to Paragraph 13(a) of the BLA provides that, Defendants are in default when Balboa unable to collect payment on three (3) consecutive payments. [*See id*., ¶6.]

Also under the BLA, Defendants were required to make sixty-six (66) weekly payments of $1,372.73, beginning on September 30, 2023.  [*See id*., ¶7, Exh. A.]  The last payment received by Balboa was credited toward the weekly payment due for October 12, 2023.  [*See id*.]  Therefore, on November 2, 2023, M

and W breached the BLA, and Shaban breached the Guaranty, by (1) failing to make three consecutive weekly payments, and (2) breaching the terms of the AA, and both have remained continuously in default.  [*See id*.]

Additionally, in connection with the BLA, M and W executed and delivered to Balboa the Note, "in connection with that certain Business Loan Agreement No. F477578-000."  [*See id*., ¶8, Exh. A.]  Shaban personally guaranteed the terms of the Note.  [*See id*.]

Pursuant to Paragraph 14C of the BLA, Balboa is entitled to declare the entire obligation due under the BLA immediately due and payable.  [*See id*., ¶9.]

At the time of Defendants' default there still remained sixty-three (63) weekly payments in, for a total of **$86,481.99**, due to Balboa.  [*See id*., ¶11, Exh. B.]  Defendants have since failed to make any payments.  [*See id*.]

In addition, based on the amount due of $86,481.99, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from November 2, 2023 (the date of breach), to August 12, 2024 (the hearing date noticed on this Motion), for a total interest amount of **$6,751.65**, accruing at a rate of **$23.69 per day**, until the entry of judgment.  [*See id*., ¶12, *see also* Densen Decl., ¶¶5-6.]

Pursuant to Paragraph 12 of the BLA, Balboa is entitled to recover its attorneys' fees and costs from Defendants.  [*See* Ngo Decl., ¶10, Exh. A.]  Balboa has incurred **$603.00**, in recoverable costs.  [*See* Densen Decl., ¶7, Exh. D.]  The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$5,059.27**.  [See *id*., ¶7.]

There is no doubt, and it cannot be disputed that: (1) Balboa and Defendants entered into the BLA and Guaranty; (2) Defendants received the business loan disbursement from Balboa; (3) Defendants ceased making payments pursuant to the BLA; and (4) Balboa suffered and continues to suffer damages due to Defendants' continued nonpayment.  Thus, Balboa has a substantially high likelihood in

succeeding on the merits of its claims.  In fact, no known defenses exist to any of the material facts.

### C.     The Sum Of Money At Stake Favors An Entry Of A Default Judgment.

As a general rule, courts factor the sum of money at stake on a case-by-case basis, and in relation to the other factors influencing whether to enter default judgment.  *See Eitel*, 782 F.2d at 1472 (default judgment was denied where plaintiff was seeking $3 million in damages *and* the parties disputed material facts).  This requires the court to assess whether the recovery sought is proportional to the harm caused by Defendants' conduct.  *See Walters v. Statewide Concrete Barrier, Inc.*, No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("[i]f the sum of money at issue is reasonably proportionate to the harm caused by the Defendants' actions, then default judgment is warranted").

In *Penpower Tech, Ltd. v. S.P.C. Tech.*, 627 F.Supp.2d 1083 (N.D. Cal. 2008), despite reasoning that plaintiff's request for $677,075.37 in treble damages, $500,000.00 in punitive damages, $100,000.00 in statutory damages, attorneys' fees of $16,497.00, and costs of $2,005.00, were "speculative" and weighed against default judgment, the court nevertheless granted plaintiff's default judgment.

Here, Balboa seeks compensatory damages pursuant to the BLA in the amount of **$86,481.99**; prejudgment interest in the amount of **$6,751.65** (from the date of breach through the date Balboa's Motion has been noticed to be heard), plus **$23.69 per day** until the entry of judgment; statutory attorneys' fees, as fixed by Local Rule 55-3, in the amount of **$5,059.27**; and costs in the amount of **$603.00**. [*See* Densen Decl., ¶¶5-7, <u>Exh. D</u>.]  The damages sought are contractually-based and arise out of the clear terms and obligations of the BLA; the prejudgment interest was calculated at the statutory rate of ten percent (10%) per annum; and the attorneys' fees requested are fixed by Local Rule 55-3.  [*See id.*]

As such, the sum of money sought is reasonable and far from speculative.  It is also substantially less than the $3 million sought in *Eitel*, in which this sum, <u>and other factors</u>, weighed in the favor of denying default judgment.  And it is also substantially less than the roughly $1.3 million sought in *Penpower Tech*, in which default judgment was granted, despite the sum of money being deemed "speculative."

Thus, the sum of money sought in this action weighs in the favor of granting default judgment, especially in the light of the other seven *Eitel* factors, and due to the certainty and reasonableness of the sum.

**D.    <u>There Are No Material Facts That Are Reasonably In Dispute.</u>**

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes, supra*, 559 F.2d at 560.  Where a plaintiff's complaint is well-pleaded and the Defendants make no effort to properly respond, the likelihood of disputed facts is very low.  *See Landstar Ranger, Inc. v. Parth Enters, Inc.*, 725 F.Supp.2d 916, 921 (C.D. Cal. 2010).

As thoroughly detailed in Section II.B., *supra*, there are no material facts that are reasonably in dispute.  Balboa, on the one hand, and Defendants, on the other, entered into the BLA on or about September 22, 2023.  [*See* Ngo Decl., ¶3, <u>Exh. A</u>.]  Under the terms of the BLA, Balboa loaned to Defendants the sum of $60,000.00, solely to be used for general business purposes or working capital needs, and not for personal, family, or household purposes.  [*See id*.]

Concurrent with the execution of the BLA, and in order to induce Balboa to enter into the BLA with M and W, Shaban personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the BLA via the Guaranty.  [*See id*., ¶4.]  Balboa relied on such Guaranty to agree to lend M and W a business loan.  [*See id*.]

The terms of the BLA incorporate by reference the terms of the AA. [*See id.*, ¶5.] Pursuant to the terms of the AA, Defendants' enrollment in Balboa's Automatic Payment Plan was required for loan approval. [*See id.*] Defendants indeed agreed to enroll in the Automatic Payment Plan and authorized Balboa to collect payments required under the terms of the BLA from a checking account designated by Defendants. [*See id.*] Defendants provided the bank account information which made it possible for Balboa to electronically debit payments under the BLA. [*See id.*]

Pursuant to Paragraph 13(a) of the BLA provides that, Defendants is in default when Balboa unable to collect payment on three (3) consecutive payments. [*See id.*, ¶6.]

Also under the BLA, Defendants were required to make sixty-six (66) weekly payments of $1,372.73, beginning on September 30, 2023. [*See id.*, ¶7, Exh. A.] The last payment received by Balboa was credited toward the weekly payment due for October 12, 2023. [*See id.*] Therefore, on November 2, 2023, M and W breached the BLA, and Shaban breached the Guaranty, by (1) failing to make three consecutive weekly payments, and (2) breaching the terms of the AA, and have both remained continuously in default. [*See id.*]

Additionally, in connection with the BLA, M and W executed and delivered to Balboa the Note, "in connection with that certain Business Loan Agreement No. F477578-000." [*See id.*, ¶8, Exh. A.] Shaban personally guaranteed the terms of the Note. [*See id.*]

Pursuant to Paragraph 14C of the BLA, Balboa is entitled to declare the entire obligation due under the BLA immediately due and payable. [*See id.*, ¶9.]

At the time of Defendants' default there still remained sixty-three (63) weekly payments, for a total of **$86,481.99**, due to Balboa. [*See id.*, ¶11, Exh. B.] Defendants have since failed to make any payments. [*See id.*]

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:23-cv-02397-JVS(DFMx)

Defendants cannot dispute any of the facts in any way or make any reasonable arguments surrounding any of the material facts in this action. If anything, Defendants' refusal to participate in, or even acknowledge the litigation, is evidence that no such defense exists.

### E.     <u>Defendants' Default Are Not The Result Of Excusable Neglect.</u>

Excusable neglect is not found where a Defendants who was properly served simply ignored the deadline to respond. *See NewGen, LLC v. Safe Cig, LLC*, 804 F.3d 606, 616 (9th Cir. 2016) (adding that Defendants' counsel contacting plaintiff's counsel after default had been entered did not constitute to "excusable neglect"). In fact, courts have required some showing of good faith by the defaulted Defendants to constitute "excusable neglect." *See Eitel*, 782 F.2d at 1471-72 (Defendants' failure to answer was held to be excusable neglect in light of ongoing settlement negotiations); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (finding excusable neglect where Defendants filed an answer past the deadline and on the same day that the motion for default judgment was filed); *O'Connor v. State of Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (excusable neglect was found where Defendants has good faith of a timely answer); *Educational Serv., Inc. v. Kansas State Board for Higher Education*, 710 F.2d 170, 176 (4th Cir. 1983) (excusable neglect found where Defendants had appeared in the action and opposed a request for a preliminary injunction in which the party had set forth its defenses); *McKnight v. Webster*, 499 F. Supp. 420, 424 (E.D. PA 1980) (excusable neglect found where Defendants sought an extension of time to respond, but a default judgment was sought in the interim).

Where the Defendants "were properly served with the Complaint, the notice for the entry of default, as well as documents in support of the instant [default judgment application]," favors this factor for the entry of default judgment. *See Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

Here, Defendants failed to make any showing whatsoever that its unwillingness to participate in the litigation stemmed from, or was in any way due to, excusable neglect.  M and W was properly served via substituted service on Marwan A. Shaban as the agent for service, by leaving copies with Alyna Lopez, the employee most in charge at M and W and by mailing copies to defendant Shaban individually at his place of business and to Marwan A. Shaban as the agent for service of process for M and W.  [*See* Dkts. 14, 21.]  Defendants have not yet made any appearance in the action, and thus, has not made any effort to answer, defend, or otherwise participate, in this action.

As detailed above, courts have found for excusable neglect only in cases in which a Defendants makes good faith showing that the Defendants attempts to participate in the litigation to address and defend the allegations set forth against the Defendants.  Declining to respond to a complaint after proper service (even in the case where Defendants' counsel contacts plaintiff's counsel after the entry of default), does not warrant a finding of excusable neglect.  *See NewGen*, 804 F.3d at 616.

Here, Defendants have failed to acknowledge their wrongdoings and the allegations it faces, even in the slightest degree.  Instead, Defendants have blatantly ignored Balboa's Complaint and all other papers filed thereafter.  Rather, Defendants' course of action in response to Balboa's Complaint, or the apparent lack thereof, is intentional, and thus, would not constitute excusable neglect.

### F.    Policy Concerns Favor Default Judgment In This Matter.

Although courts have expressed that as a general rule, policy favors decisions on the merits, cases should be decided on its merits only when *reasonably possible*. *See Pena v. Seguros La Comercia, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) (emphasis added).  The policy preference to decide a case on its merits is not dispositive, and thus, does not preclude a court from granting a default judgment.

*See Penpower Tech, Ltd.*, 627 F.Supp.2d at 1093 (Defendants' failure to respond to a Complaint makes a case decision on its merits impractical, if not, impossible).

Here, even the policy concerns to decide a case on its merits favor Balboa to grant Balboa's request for a default judgment. As detailed in II.E., *supra*, Defendants have made it abundantly clear that they will not participate in this litigation, or even acknowledge the instant action. Defendants have deliberately chosen a course of action to simply ignore Balboa and its claims against them, including their own liability. Thus, the Court's decision will not be based on the merits of this case since there is no reasonable possibility at this point given Defendants' refusal to participate in this litigation.

Moreover, policy concerns certainly do not weigh in favor of rewarding Defendants for their unwillingness to account for their liability to Balboa, and the extremely prejudicial windfall they would receive should their deliberate silence and stalling techniques be rewarded, at Balboa's expense. *See* Section II.A., *supra*.

## G.    Plaintiff Has Proven Its Damages.

Under the BLA, Defendants were required to make sixty-six (66) weekly payments of $1,372.73, beginning on September 22, 2023. [*See* Ngo Decl., ¶7, Exh. A.] The last payment received by Balboa was credited toward the weekly payment due for October 12, 2023. [See *id*.] Therefore, on November 2, 2023, M and W breached the BLA, and Shaban breached the Guaranty, by (1) failing to make three consecutive weekly payments, and (2) breaching the terms of the AA, and has remained continuously in default. [*See id*.]

At the time of Defendants' default there still remained sixty-three (63) weekly payments in, for a total of **$86,481.99**, due to Balboa. [*See id*., ¶11, Exh. B.] Defendants have since failed to make any payments. [*See id*.]

In addition, based on the amount due of $86,481.99, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from November 2, 2023 (the date of breach), to August 12, 2024 (the hearing date

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:23-cv-02397-JVS(DFMx)

noticed on this Motion), for a total interest amount of **$6,751.65**, accruing at a rate of **$23.69 per day**, until the entry of judgment. [*See id*., ¶12, *see also* Densen Decl., ¶¶5-6.]

Further, pursuant to Paragraph 12 of the BLA, Balboa is entitled to recover its attorneys' fees and costs from Defendants. [*See* Ngo Decl., ¶10; *see also* Densen Decl., ¶7.] Balboa has incurred **$603.00**, in recoverable costs. [*See* Densen Decl., ¶7, Exh. D.] The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$5,059.27**. [*See id*., ¶7.]

Altogether, this totals out to **$98,895.91** (as of August 12, 2024), calculated as follows:

| | | |
|---|---|---|
| - | Amount owed: | $86,481.99 |
| - | Prejudgment Interest: | $ 6,751.65 |
| - | Attorneys' Fees: | $ 5,059.27 |
| - | Recoverable Costs: | $   603.00 |
| - | **Total** | **$98,895.91** |

## III.  CONCLUSION

Based on Balboa's Complaint, Motion for Default Judgment, and all supporting papers, Balboa respectfully requests that the Court grant its Motion for Default Judgment against Defendants, in the total amount of **$98,895.91**.

DATED: July 11, 2024            SALISIAN | LEE LLP

By: _____
    Jared T. Densen
    Neal S. Salisian
    Glenn R. Coffman

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL